# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:23 CR 300 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **CURTIS SANDERS, III,** | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

### INTRODUCTION

Currently pending before the Court is Defendant Curtis Sanders, III's Motion to Suppress. (Doc. 32). The Government opposes (Doc. 36), and Sanders replies (Doc. 39). For the reasons discussed below, the Court denies Sanders's motion.

### BACKGROUND[1]

The search at issue here arose from a drug trafficking investigation that began with information received from a cooperating source in October 2021. (Doc. 32-1, at ¶ 6). The source participated in at least 50 controlled drug buys, approximately 29 of which were from Sanders between June 2022 and April 2023. *Id.* at ¶ 7-15. The investigation – which involved both in person and electronic surveillance of Sanders and others – revealed multiple locations from which officers believed Sanders and others were living at, selling narcotics from, or were connected to drug trafficking activities. *Id.* at ¶¶ 16, 22-25. These locations were on Talmadge

---

1. The following facts are taken from FBI Special Agent Kyle Fulmer's Affidavit in Support of a search warrant for the Four Seasons Drive address. (Doc. 32-1).

Road, Pine Valley Lane, Yermo Drive, and Four Seasons Drive. The Four Seasons Drive address at issue here was the last of the locations identified in February 2023. *Id.* at ¶ 25.

The search warrant affidavit details each of the controlled buys. *Id.* at ¶ 7. These took place in various locations, but after November 2022, almost exclusively in parking lots. *See id.*

As is relevant to the instant motion, on February 17, 2023, the confidential source arranged to purchase fentanyl from Sanders, who told the source to meet him in a parking lot. *Id.* at ¶ 10. Officers surveilling Sanders observed him leave the Talmadge Road location, drive to a different parking lot, engage in an apparent narcotics transaction, and then drive to the parking lot at which he met the confidential source. *Id.* The confidential source made a controlled purchase from Sanders (of a substance that was later determined to be 4.95 grams of Diphenhydramine, 4-ANPP and Fentanyl). *Id.* Task force officers also observed Sanders engage in another apparent hand-to-hand drug transaction in the same parking lot before departing. *Id.* After this controlled purchase and additional observations, officers tracked Sanders to the Pine Valley Lane location, where he entered and stayed for approximately six minutes; he then drove to the Four Seasons Drive location, entered with a key, and stayed for almost 20 minutes. *Id.* at ¶ 25. When he left, he locked the door with a key, and traveled back to the Talmadge Road location. *Id.*

Upon discovering Sanders' access to the Four Seasons Drive location, officers checked the GPS tracking data and discovered each of three vehicles they were electronically tracking as operated by Sanders "had been to this Four Seasons location on five different days prior to February 14, 2023." *Id.* at ¶ 26. From February 17, 2023, to March 8, 2023, tracking data showed Sanders going to this location more often, "visiting the location 11 different days in that timeframe and staying for varying periods of time" from minutes to hours. *Id.*

On March 25, 2023, officers observed Sanders go to the Four Seasons Drive location. *Id.* at ¶ 29. They saw Sanders arrive at the location by himself, use a key to enter, and stay for approximately fifteen minutes. He then left, locked the door behind him, and drove "directly to a parking lot at Airport Highway and Reynolds Road". *Id.* He then "met a male subject in a Ford Edge SUV and engaged in an apparent hand to hand transaction with the male." *Id.*

On March 28, 2023, officers observed Sanders and an identified co-conspirator[2] meet at the Talmadge Road location. *Id.* at ¶ 30. The following morning (March 29) at 7 a.m., officers observed the co-conspirator's car parked at the Four Seasons Drive location. *Id.* They watched the co-conspirator leave, drive to the Pine Valley Lane location, and meet with Sanders. *Id.* After that meeting, the co-conspirator briefly returned to the Four Seasons Drive location, and then met Sanders in the parking lot of the Talmadge Road location. *Id.* Both entered the Talmadge Road location; Sanders was carrying a black backpack. *Id.* Sanders then left and engaged in a number of observed apparent drug transactions. *Id.* Later that same day, Sanders, an unidentified individual, and the identified co-conspirator met at the Four Seasons Drive location ("all arriving between 4 and 4:05 p.m."); Sanders had what appeared to be the same black backpack. *Id.* All three entered the Four Seasons Drive location with Sanders using a key. *Id.* The identified co-conspirator exited with a duffle bag and a pair of boots. *Id.* Sanders and the unidentified individual left together about fourteen minutes later; Sanders was no longer carrying the backpack. *Id.*

Officers continued to surveil Sanders on a daily basis between April 2, 2023, and May 5, 2023; Sanders "continued to visit all four" locations" and was also observed engaging in

---

2. Elsewhere, the search warrant affidavit details that this same individual participated in a controlled buy in September 2022. (Doc. 32-1, at 7).

apparent drug transactions on a daily basis with numerous individuals in various parking lots. *Id.* at ¶ 31; *see also id.* at ¶ 37.

As to the Four Seasons Drive location, the officers' investigation revealed that a third-party rented the location in March 2021, using a Michigan driver's license. *Id.* at ¶ 34. Management at the apartment complex stated that the renter indicated he resided in the Cincinnati area when he rented the apartment in Toledo. *Id.* The search warrant affidavit also states that the affiant "has never observed" the third-party renter "at this location since February 2023 when it first came to the attention of investigators." *Id.* The Pine Valley Lane and Yermo Drive locations investigators identified were also rented by third parties. *Id.* at ¶¶ 33, 35.

The search warrant affidavit additionally details Fulmer's almost 30 years of law enforcement experience and information obtained about drug-related crimes based on his training and experience. *Id.* at ¶¶ 4-5, 38, 40. He opined that based on his observations and experience, he believed Sanders "uses a number of locations in the Toledo area to distribute his illegal narcotics . . . as a means to conceal his drug trafficking activity" and that he suspected Sanders was using Four Seasons Drive as a "stash location[]" for the narcotics he sells." *Id.* at ¶ 38.

On May 5, 2023, Magistrate Judge Darrell A. Clay issued search warrants for all four identified locations. *See* Doc. 1-1. The warrant for Four Seasons Drive sought narcotics, as well as other evidence of drug trafficking (e.g., tools, packaging, records, proceeds, firearms, etc.). (Doc. 37, at 4). Officers executed the Four Seasons Drive search warrant on May 10, 2023; they seized narcotics, a firearm, and ammunition. (Doc. 1-1, at ¶ 7). The Government represents that nothing seized from this location was substantively charged in the indictment but is relevant conduct of the conspiracy.

4

**STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put another way, there must be a "nexus" between the "place" to be searched and the "things" to be seized. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231); *see also Gates*, 462 U.S. at 231 (highlighting the "common-sense conclusions about human behavior" that are integral to an analysis of probable cause); *Florida v. Harris*, 568 U.S. 237, 244 (2013) (describing a "practical and common-sensical standard" underlying the analysis of probable cause).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks only to the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To encourage use of the warrant procedure, a magistrate judge's probable-cause determination is afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised

his discretion. *Gates*, 462 U.S. at 236 (quotation omitted); *see also United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (recognizing courts' obligation to give issuing judges the benefit of the doubt in "doubtful or marginal cases"); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) ("[W]e may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority."); *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) ("[S]o long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.").

## DISCUSSION

Sanders moves to suppress evidence obtained as a result of a search warrant executed on a residence at Four Seasons Drive in Toledo, Ohio. (Doc. 32). Specifically, he argues the warrant lacked probable cause as it failed to establish a nexus between the address and the expectation of evidence of suspected drug trafficking. The Government responds that Sanders has not established standing to challenge the search, and that even if he did, the warrant affidavit provided sufficient evidence of a nexus between the residence and drug-trafficking activity. For the reasons discussed below, the Court denies Sanders' motion to suppress.

Standing

The Government first challenges Sanders' standing to challenge the search. Sanders responds that the facts, as alleged in the warrant affidavit, establish his standing.

To successfully bring a Fourth Amendment claim, there must be a legitimate expectation of privacy in the place searched or the thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Talley,* 275 F.3d 560, 563 (6th Cir. 2001). "[S]tanding is 'an element' of a Fourth Amendment suppression claim" and a "defendant bears the 'burden' of showing he has standing," which is "shorthand" for demonstrating that a search or seizure infringed upon the

6

party's own rights. *United States v. Russell*, 26 F.4th 371, 374-75 (6th Cir.), *cert. denied*, 143 S. Ct. 385 (2022). The defendant has the burden of establishing the standing necessary to assert a Fourth Amendment violation by a preponderance of the evidence. *United States v. Ponder*, 240 F. App'x 17, 19 (6th Cir. 2007).

The Government asserts that Sanders' possession of a key alone does not demonstrate a legitimate expectation of privacy. Sanders responds that the allegations in the search warrant establish his standing.

According to the search warrant affidavit, the residence was rented to a third party, but Sanders had a key, and was observed accessing the residence on multiple occasions, leaving a backpack behind at one point, and locking the door when he departed. (Doc. 32-1, at ¶¶ 25-26, 29-30, 37). At one point, the affidavit seemingly implies that Sanders may have spent the night at the residence, but it contains no facts indicating an overnight stay was observed. *Id.* ¶ 37 ("It was also apparent to your affiant from this activity that SANDERS continues to have access to both [another location] and Four Seasons drive locations although he (SANDERS) doesn't appear to spend the night at these locations as frequently as he does [two other locations]."). Elsewhere, the affidavit states it was believed the third-party rented the apartment for Sanders and an associate. *Id.* at ¶ 34 ("It was apparent to your affiant, after obtaining these records, that [the third party] is an associate to [another individual] and rented this apartment for SANDERS and [the other individual]."). The basis in part for the belief that the third party had rented the apartment for Sanders and another was based on conversations with apartment management's statements to the agent that (1) the third-party renter indicated he was living in Cincinnati at the time he rented the apartment in Toledo, and (2) the agent never observed the third-party renter at the location during surveillance between February and April 2023. *Id.* at ¶ 34.

Although the Court finds this to be a close call, it declines to resolve the issue on standing grounds because, as set forth below, even if Sanders has standing to challenge the search, he has not demonstrated a constitutional violation.

Probable Cause

Sanders contends the warrant failed to establish a specific and concrete connection between suspected drug activity and the Four Seasons Drive address. The Government responds that the totality of the circumstances – specifically including Sanders' February 17 and March 25 visits to the address adjacent to suspected or confirmed drug deals – establishes probable cause. The Court finds the search warrant affidavit sufficiently established the required nexus between the items sought and the location to be searched.

Probable cause for the issuance of a search warrant requires a "nexus between the place to be searched and the evidence sought". *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (en banc); *see also Gates*, 462 U.S. at 238–39 (information contained in the affidavit must indicate to a "fair probability" why the evidence of criminal activity will be found "in a particular place"). And this connection must be more than "vague" or "generalized". *Carpenter*, 360 F.3d at 595. "The mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home." *United States v. Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008).

Although the Sixth Circuit has at times "'struggled to identify the quantum of evidence' required for probable cause to search a drug dealer's home", its cases "leave no doubt that probable cause may exist if the evidence provided to a magistrate 'directly connect[s] the residence with the suspected drug dealing activity[.]'" *United States v. Miller*, 850 F. App'x 370, 373 (6th Cir. 2021) (quoting first, *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018), and

8

second, *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016)). Such a connection has been found where the defendant traveled to or from a residence just before or just after a drug buy, particularly when combined with additional information. *See, e.g.*, *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) (finding the affidavit's description of "an incident where law enforcement agents observed Defendant visiting his residence right before he traveled to the site of a drug sale", combined with the affiant's statements regarding his significant experience in narcotics investigations established probable cause to search the residence).

Sanders contends a nexus is lacking here because (1) as to the February 17, 2023, controlled buy, the affidavit details Sanders made an intermediary stop between the transaction and the Four Seasons Drive location; and (2) as to the March 25, 2023, event, this was an "apparent" drug transaction rather than a controlled buy. Sanders contends this distinguishes the cases relied upon by the Government. He further contends that the other information alleged is too vague and generalized to support a finding of probable cause as to the Four Seasons Drive location.

The Court finds the totality of the circumstances set forth by the search warrant affidavit establishes the required nexus and probable cause. First, as to the February 17, 2023, observations, the affidavit details that Sanders was observed engaging in one controlled buy and several additional apparent narcotics transactions; he then went to a separate location (the Pine Valley Lane location) very briefly (for six minutes) and then proceeded directly to the Four Seasons Drive location and stayed twenty minutes. Although Sanders is correct that this is not a "direct path" (and perhaps would not support a nexus on its own), this is simply one circumstance in the context of a broader investigation.

9

Second, as to the March 25, 2023, observations, Sanders is correct that the search warrant details an "apparent hand to hand transaction", rather than a confirmed controlled buy directly after Sanders left the Four Seasons Drive location. However, the other details in the search warrant affidavit support a finding that this observation supports establishing a nexus between drug trafficking and the Four Seasons Drive location. This includes Fulmer's experience with drug investigations, and that the observed "apparent hand to hand transaction" mirrored similar observed controlled buys during the same time period and in the same type of location (in parking lots).

Third, none of these observations existed in a vacuum, but rather in the context of an ongoing drug conspiracy investigation. The affidavit detailed that Sanders met a co-conspirator at the Four Seasons Drive location. It further detailed that on March 29, Sanders met with the co-conspirator at one location (Pine Valley Lane), the co-conspirator then "briefly returned to the Four Seasons Drive location but left again shortly thereafter" and met Sanders again at the Talmadge Road location; Sanders carried a black backpack into the Talmadge Road location. (Doc. 32-1, at ¶ 30). Shortly thereafter, Sanders left the Talmadge Road location and engaged in "a number of apparent drug transactions." *Id.* Later that same day, Sanders and the co-conspirator met at Four Seasons Drive; Sanders carried in what appeared to be the same backpack and did not have it when he left. *Id.* Finally, the affidavit detailed investigators' observations that the Four Seasons Drive location had been rented by a third-party who was never observed at the location and their belief, based on training and experience, that the address was being used as a "stash house".

The Court finds the facts alleged in the warrant affidavit provided a basis for the reasonable inference that Sanders was using the Four Seasons Drive location to engage in

ongoing drug trafficking and that evidence thereof would be found there. That is, the information in the affidavit, taken as a whole, indicated a "fair probability" that evidence of drug trafficking would be found at the Four Seasons Drive location. *Gates*, 462 U.S. at 238–39.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Sanders's Motion to Suppress (Doc. 32) be, and the same hereby is, DENIED.

       s/ *James R. Knepp II*
       UNITED STATES DISTRICT JUDGE